IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 08-03 J |
| | ) | |
| SHEILA SHARESE GAITHER | ) | JUDGE KIM R. GIBSON |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

### SYNOPSIS

Defendant was charged with violation of 18 U.S.C. § 1513(b) for threatening a government informant, a felony. She sought, pursuant to a plea agreement, to plead guilty instead to 18 U.S.C. § 111(a), under the facts of her case a misdemeanor. Before accepting her plea, the Court had to determine (1) whether a government informant was a protected person under § 111 and, if so, (2) whether in the course of her threats Defendant had satisfied the elements of common law assault by creating in the informant a reasonable apprehension of immediate bodily harm. For the reasons given below, the Court was satisfied as to both conditions and accepted Defendant's plea to the lesser offense.

### FACTS[1]

Sometime, apparently in 2006, an unidentified individual approached agents of the FBI and offered his services as a government informant. He was ultimately "signed up" as an official informant, to assist federal agents in the investigation of narcotics crimes. The informant made a controlled

---

[1] The facts below were set forth by counsel and attested to by Defendant at the plea hearing held before the Court on February 1, 2008.

1

purchase of illegal drugs from George Montgomery, the then-boyfriend of Defendant. As a result of that controlled purchase, federal agents executed a "buy and bust" on Mr. Montgomery. Defendant was at least intermittently present on these occasions.

On September 20, 2006, Mr. Montgomery was in an office with federal agents, and was allowed to phone Defendant using one of the agents' cell phones. The agent was able to hear both sides of the conversation. The call lasted approximately ten minutes, and much of it was devoted to an attempt to figure out who had informed on Mr. Montgomery. Eventually, Defendant and Mr. Montgomery correctly identified the informant.

At that point Defendant became enraged, and the agent could hear her "screaming" on the phone. A few minutes after the conversation between Defendant and Mr. Montgomery ended, the informant called the agents. He appeared to be very frightened. He told the agents that Defendant, who lived in the informant's neighborhood, had knocked on the door of his residence and when he answered had accused him in a threatening manner of informing on Mr. Montgomery. The informant, who was smaller than Defendant, had denied the accusation, fearing that if he had not he would have been attacked immediately.

Defendant, who was drunk at the time, told the informant that if she found out that he had informed on Mr. Montgomery she would "f*** him up," and that if he did not give her $3,000 to hire a lawyer for Mr. Montgomery she would also "f*** him up." She then returned to her home, where she was arrested. After being read her *Miranda* rights, she confessed to having threatened the informant in the terms described above. The informant was sufficiently distressed by the incident that he moved to another city to avoid further contact with Defendant.

On November 15, 2006, Defendant was indicted at 3:06-cr-34 for threatening to cause bodily

injury to an unnamed federal law enforcement informant, in violation of 18 U.S.C. § 1513(b)(2). Document No. 4, 3:06-cr-34. That is a Class C felony for which the Sentencing Guidelines recommend a range of imprisonment of from 41 to 51 months for a person with no criminal history points, and for which the maximum statutory sentence is ten years. 18 U.S.C. §§ 1513(b), 3559(a)(3); USSG § 2J1.2(a), (b)(1)(B), Ch. 5 Pt. A. Pursuant to a plea agreement, Defendant subsequently sought to plead guilty to an information at 3:08-cr-03 accusing her of forcibly assaulting, impeding, intimidating and interfering with a person designated by 18 U.S.C. § 1114, in violation of 18 U.S.C. § 111(a)(1). Under the facts of this case that offense is a class A misdemeanor.[2] 18 U.S.C. §§ 111(a), 3559(a)(6), Document No. 1, 3:08-cr-03.

## DISCUSSION

Such a plea was obviously to Defendant's advantage, and on the facts of the case provided for a penalty more in keeping with the magnitude of Defendant's offense than the roughly four years of incarceration recommended by the Sentencing Guidelines for violation of 18 U.S.C. §§ 1513(b). However, before accepting any guilty plea the Court must determine that the plea has a factual basis. Fed. R. Crim. P. 11(b)(3). This does not require proof beyond a reasonable doubt; the Court merely needs to "find sufficient evidence in the record as a whole to justify a conclusion of guilt." *United States v. Lessner*, 498 F.3d 185, 197 (3d Cir. 2007)(citing *United States v. Cefaratti*, 221 F.3d 502, 509-10 (3d Cir. 2000)). Given the elements of an offense under 18 U.S.C. § 111(a), it was not immediately obvious to the Court that there was sufficient evidence in the instant case, or in fact that the informant was within the class of persons protected by the statute.

---

[2] Since there was no claim that Defendant had actually touched the informant, for the purposes of § 111 her actions constituted a simple assault. *United States v. McCulligan*, 256 F.3d 97, 103-04 (3d Cir. 2001). A simple assault under 18 U.S.C. § 111(a) carries a maximum statutory penalty of one year of imprisonment. 18 U.S.C. § 111(a).

3

For the reasons given below, the Court ultimately did accept the plea, on February 1, 2008. As there is a dearth of case law on the application of § 111(a) to private individuals of any sort, let alone informants, and since the broad range of penalties available under § 111 allows, in cases such as Defendant's, a more accurate matching of the punishment to the crime than does 18 U.S.C. § 1513(b)(2), an explanation of the reasoning behind this decision is appropriate. It begins with an analysis of the pertinent statutes.

### 1. Informant as a covered person under the statutes

Section 111(a) makes it a crime to "forcibly assault[], resist[], oppose[], impede[], intimidate[], or interfere[] with any person designated in section 1114 of [Title 18] while [that person is] engaged in or on account of the performance of official duties . . . ."[3] Section 1114 makes it a federal crime to kill or attempt to kill certain individuals with some connection to the federal government. Earlier versions of § 1114 simply provided a long list of protected federal officials. *See United States v. Roy*, 408 F.3d 484, 489 n.2 (8th Cir. 2005); *United States v. Sapp*, 272 F.Supp.2d 897, 903 n.4 (N.D. Cal. 2003)(citing 18 U.S.C. § 1114 (1994))(listing all protected individuals as of 1994). However, Congress chose to define the persons protected by § 1114 in a "completely different manner" with the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, § 727(a),110 Stat. 1302. *Sapp*, 272 F.Supp.2d at 904. Section 1114 now provides "even broader coverage" by criminalizing the killing or attempted killing of "any officer or employee of the United States or any agency in any branch of the United States Government . . . or *any person assisting such an officer or employee in the*

---

[3] The information at 3:08-cr-03 charged that Defendant did knowingly "assault, impede, intimidate *and* interfere with a person designated in Section 1114 . . . ." Document No. 1, 3:08-cr-03 (emphasis added). Such charging in the conjunctive does not, however, preclude a plea in the disjunctive; it was only necessary for Defendant to plead to, and the Government to offer proof for, any one of the alternatives presented in the information. *Valansi v. Ashcroft*, 278 F.3d 203, 216 n.10 (3d Cir. 2002).

4

*performance of such duties or on account of that assistance . . . ."* 18 U.S.C. § 1114 (emphasis added); *United States v. Smith*, 296 F.3d 344, 347 n.1 (5th Cir. 2002). Whether an FBI informant falls within the italicized protected category was the threshold issue in the Court's consideration of Defendant's plea.

The plain meaning of §§ 111 and 1114 seems to bring government informants within the ambit of the statutes. *See Williams v. Taylor*, 529 U.S. 420, 431, 120 S.Ct. 1479, 1487-88, 146 L.Ed.2d. 435, 448 (2000)(citations and internal quotation marks omitted)(holding that the courts must "give the words of a statute their ordinary, contemporary, common meaning absent an indication Congress intended them to bear some difference import"). However, the cases addressing the issue are so sparse as to have given the Court pause. There is nothing remotely on point in the Third Circuit. Moreover, much of the pre-1996 jurisprudence is of limited applicability, since the only non-official individuals covered by § 1114 before the 1996 amendments were "person[s] employed to assist" a United States marshal or deputy marshal, or "any person assisting [an officer, employee or agent of the customs or internal revenue service] in the execution of his duties." *Sapp*, 272 F.Supp.2d at 904 n.5.

The case that most closely resembles Defendant's is *Gravely v. United States*, No. Civ.A. 7:00-CV-00741, Civ. A. 7:00-CV-00692, 2001 WL 34806541 (W.D. Va. Sept. 6, 2001)(no LEXIS cite avaialable). In *Gravely*, an individual "provided investigators with information relevant to the prosecution of Jimmie Penn." *Id.* at *1. Penn's father offered to pay Gravely to kill the informant. *Id.* Gravely subsequently drove a vehicle from which another person shot at "a moving vehicle occupied by [the informant] and others"; accepted money from Penn's father; and gave that money to the actual shooter. *Id.* Gravely was charged with, pleaded guilty to, and was sentenced for violation of 18 U.S.C. § 1114. *Id.* at *1, *3.

In appealing his sentence pursuant to 28 U.S.C. § 2255, Gravely argued that he should have been sentenced under 18 U.S.C. § 1513, the statute that criminalizes retaliation against federal witnesses, instead of under § 1114, because his intended victim "was not assisting a federal officer in the performance of her official duties." *Id.* at *3. His primary argument was that no federal officer was present during the attempted murder. *Id.*

The court, applying a pre-1996 holding involving an undercover state officer who was "working in conjunction with federal officers," found that *anyone* "who assists a federal officer perform his investigative function" is a protected party under § 1114. *Id.* at *4 (citing *United States v. Chunn*, 347 F.2d 717, 721 (4th Cir. 1965)). It also found that an individual may be a protected person under § 1114 even if the federal officer is not present at the time of the assault. *Id.* (citing *United States v. Murphy*, 35 F.3d 143, 147 (4th Cir. 1994)).[4]

A case decided under the previous version of § 1114 provides substantial support for the *Gravely* court's holdings. In *United States v. Matthews*, 106 F.3d 1092, 1093-94, (2d Cir. 1997), a handyman employed by the United States Marshals Service was threatened with a knife[5] while installing drywall in a single room occupancy welfare hotel being operated by the Marshals Service. The court held that since the Marshals Service was operating the hotel to prevent and control the crime that had been rampant in the facility until the Service took over its operation, and since maintenance was part of the operation of the hotel, that the handyman had been employed to assist the Service in its

---

[4] This holding is not uncommon. *See United States v. Ama*, 97 Fed.Appx. 900, 902 (10th Cir. 2004); *United States v. Jacquez-Beltran*, 326 F.3d 661, 663 (5th Cir. 2003).

[5] Because a weapon was involved, Matthews was charged under 111(b). *Matthews*, 106 F.3d at 1094-95.

6

official law enforcement duties and was therefore a covered person under §§ 111 and 1114.[6] *Id.* at 1096 (citing *Murphy*, 35 F.3d. at 144 (holding that a guard at a county jail that had contracted with the Marshals to house federal prisoners was a covered person under §§ 111 and 1114); *United States v. Schaffer* 664 F.2d 824, 825 (11th Cir. 1981)(*per curiam*)( holding that a private security guard hired by the Marshals Service to guard federal prisoners during their treatment at a private hospital was a covered person under §§ 111 and 1114)).

*United States v. Holder*, 256 F.3d 959 (10th Cir. 2001), deals with the application of the present version of § 1114 to a private citizen who was not being formally compensated for his efforts.[7] Here the victim, Pickens, was the "point man" of a group of individuals who had purchased a 2,220-acre parcel of land from the Natural Resources Conservation Service (hereinafter Service) of the United States Department of Agriculture (hereinafter Department) that was encumbered by a wetlands easement. *Id.* at 960, 966. Holder, a neighboring landowner, allowed his cattle to run free on the group's land, cut timber from the land, and used a bulldozer to install a culvert in a creek that was apparently on the land, all activities that violated the terms of the easement. *Id.* at 960- 61. The partnership, as holder of the easement, was unconditionally liable for Holder's violations but was unable to obtain relief from his depredations either through the courts or local law enforcement. *Id.* Finding the situation otherwise irremediable, the Service ultimately decided to build a fence at its

---

[6] As noted above, § 1114 no longer requires that the assisting party be employed by the federal officer or employee.

[7] The handyman in *Matthews* and the security guard in *Schaffer* were private citizens who were nonetheless being paid for their protected activities. The Court assumes that federal informants such as the ones in *Gravely* and Defendant's case normally engage in such activity for some sort of consideration, either in the form of money, pleas to lesser charges, or motions pursuant to 18 U.S.C. § 3553(e) and USSG § 5K1.1. The victim in *Holder* was not, however, completely altruistic; the government was offering to construct a fence at its own expense that would go a long way toward relieving the substantial liabilities that the victim and his partners were then incurring. *Holder*, 256 F.3d at 960-61. Although the Court sees no reason why §§ 111 and 1114 could not apply to persons who tender their assistance gratuitously, it is unaware of any such case. *Holder* arguably goes as far as any in that direction.

7

expense on the protected land. *Id.* at 961.

Pickens agreed to assist an agent of the Service in flagging a fence line. *Id.* During the course of the flagging the two men encountered Holder, who shot and killed Pickens and threatened the agent with his shotgun. *Id.* at 961-62.

Holder was convicted of violating § 1114 for killing Pickens while he was "assisting . . . an employee of the federal government, while [the employee] was engaged in and in performance of his official duties," and for violating § 111(a) for threatening the agent with his gun. *Id.* at 962. On appeal, the court held that the government agent was engaged in official duties when he went out to flag the fence line; that Pickens was assisting the agent in those duties; and that Pickens was therefore a covered person under §1114 and the agent a covered person under § 111. *Id.* at 966-67. In so holding, the court noted that Pickens, although a private citizen, "was obligated to fulfill the requirements he had undertaken when he purchased property encumbered with a Department wetlands easement" and that, since the Department "envision[ed] a shared responsibility between owners of federal wetlands easements and the federal government . . . [the victim] was surely an alter ego of the Wetlands Reserve program, required to enforce its conditions or face considerable financial penalties." *Id.* at 966 & n.13. The court was careful to stress, however, that "assistance" as defined by § 1114 must directly relate to the performance of the government agent's official duties so that, for example, a private individual en route to repair a government official's car, "who is punched by another motorist in a traffic dispute," would not be a protected party within the meaning of § 1114. *Id.* at 967 n.14 (citing *Matthews*, 106 F.3d at 1096).

## Conclusion

The federal agents in Defendant's case were clearly engaged in their official duties when they

8

sought to enforce the nation's drug laws. The informant clearly assisted them in their official duties when he provided the information that led to the arrest of Mr. Montgomery for violation of those laws. The plain meaning of § 1114 therefore supports the conclusion that the informant was a covered person under §§ 111 and 1114. Moreover, in enacting § 111 "Congress intended to protect *both* federal officers and federal functions." *United States v. Feola*, 420 U.S. 671, 679, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975)(emphasis in original); *Roy*, 408 F.3d at 490-91 (citations omitted); *Jacquez-Beltran*, 326 F.3d at 663 n.5 (citing *Feola*, 420 U.S. at 679) ; *Holder*, 256 F.3d at 963 (citing *Feola*, 420 U.S. at 679, 683-84); *United States v. Martin*, 163 F.3d 1212, 1215 (10th Cir. 1998)(citing *Feola*, 429 U.S. at 679). *But see Sapp*, 272 F.Supp.2d at 908-09 (holding that the 1996 changes to § 1114, by changing its description of the protected class of § 111, overruled *Feola*'s federal function holding, and substituted a regime intended "to protect only federal officials").[8] Extending the statute's protection to federal informants protects the essential federal function of law enforcement.

The Court notes that in the cases above the attacks occurred while the protected person was in the act of assisting a federal officer. Indeed, the *Gravely* court was careful to note that the intended victim was in the process of attempting to gather information about the alleged "hit" at the time of the attempted murder. *Gravely*, 2001 WL 34806541, at *4 n.7. Such contemporaneity is not, however, an element of § 111(a); to the contrary, the statute affords protection from assaults "on account of" the protected party's assistance to government officials. In addition, § 111(a)(2) criminalizes a forcible assault on "any person who *formerly* served as a person designated in section 1114 on account of the

---

[8] Even if *Sapp* is correct that after 1996 only federal agents and not federal functions are protected by § 111, *Holder* demonstrates that when private individuals render assistance they are standing in the shoes of the agents whom they are assisting, and are therefore afforded the same protections as the agents themselves. *See Holder*, 256 F.3d at 966 & n.13.

9

performance of official duties during such person's term of service" (emphasis added); the statute clearly contemplates retribution for past acts.[9] The Court had no need to determine whether the informant in Defendant's case was in the process of assisting law enforcement at the moment of the assault; it merely needed to determine that the assault occurred on account of the informant's assistance. On the information presented, it was clear that it had.

## 2. Assault

Subsections 111(a)(1) and (2) both begin with the words "forcibly assaults." That term has been construed, in cases not involving physical contact, to require a showing of "such a threat . . . as to inspire fear of pain, bodily harm, or death," *United States v. Walker*, 835 F.2d 983, 987 (2d Cir. 1987)(citation omitted); *see also United States v. Fallen*, 256 F.3d 1082, 1088 (11th Cir. 2001); *United States v. Street*, 66 F.3d 969, 977 (8th Cir. 1995). However, in cases of simple assault under § 111(a) the adjective "forcibly" is read out of the statute, and the unmodified common law definition of simple assault is applied instead.[10] *Fallen*, 256 F.3d at 1088 (citing *United States v. Chestaro*, 197 F.3d 600, 605-06 (2d Cir. 1999)); *McCulligan*, 256 F.3d at 102-03.

The Third Circuit has adopted the *Chestaro* court's definition of simple assault, holding it to be "a crime committed by either a willful attempt to inflict injury upon the person of another, or by a threat to inflict injury upon the person of another which, when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily harm." *McCulligan*, 256 F.3d at 103 (quoting

---

[9] The Court notes that § 111(a)(2) omits the words "resists, opposes, impedes . . . or interferes with" from its list of proscribed activities. That is by design; it is Congress's means of distinguishing between the activities in which an active former official may engage. *United States v. Vallery*, 437 F.3d 626, 632 (7th Cir. 2006). The distinction is without significance in the instant case, however, as Defendant's actions clearly fall within the categories of either assault or intimidation.

[10] The jurisprudence surrounding this point is muddied by the fact that the misdemeanor simple assault portion of the statute dates only from 1994; earlier cases deal only with felonies involving forcible assault. Pub. L. No. 103-322 § 320101, 108 Stat. 2108 ; *Fallen*, 256 F.3d at 1088.

10

*Chestaro*, 197 F.3d at 605)(internal quotation marks and citation omitted). The Third Circuit has also adopted the *Chestaro* court's delimitation of the three categories of conduct possible under § 111:

> (1) simple assault, which, in accord with the common law definition, *does not involve touching*; (2) "all other cases," meaning assault that *does involve contact* but does not result in bodily injury or involve a weapon;[11] and (3) assaults resulting in bodily injury or involving a weapon.

*Id.* (quoting *Chestaro*, 197 F.3d at 606)(emphasis in original); *see also United States v. Ramirez*, 233 F.3d 318, 322 (5th Cir. 2000).

Since there was no suggestion that Defendant ever touched the informant, she could only be charged with simple assault under § 111(a).[12] There is no question that she intentionally threatened the informant when she said she would "f*** him up." Based upon the descriptions of the size of the informant relative to that of Defendant, Defendant's actions, the Court's observation of Defendant, and the fact that she was intoxicated at the time,[13] the Court had no trouble finding that Defendant had the apparent present ability to harm the informant.

The critical issue for the Court was determining whether a reasonable person, standing in the informant's shoes, would have feared *immediate* harm. *See United States v. Temple*, 447 F.3d 130, 140 (2d Cir. 2006)(citing *Walker*, 835 F.2d at 987). The threats to "f*** [the informant] up" were obviously directed toward an indefinite future, and therefore not sufficient to make out a violation of

---

[11] This is not a universal approach. The Eleventh Circuit, for example, also recognizes felonious forcible assault even where there has been no touching, so long as the threat was sufficient to put the subject of the assault in fear of "immediate serious bodily harm or death." *Fallen*, 256 F.3d at 1088. The Eighth Circuit takes a similar view. *See Yates*, 304 F.3d at 823.

[12] The analysis is the same for resistance, opposition, impedance, intimidation or interference that do not involve touching, since "the simple assault provision of § 111(a) applies to all violations of § 111(a), not merely to 'assaults.'" *Vallery*, 437 F.3d at 633.

[13] The Court notes that since § 111 is a general intent statute, voluntary intoxication is not a defense. *United States v. Veach*, 455 F.3d 628, 631 (6th Cir. 2006).

11

§ 111. *See Walker*, 835 F.2d at 987 (citing *United States v. Bamberger*, 452 F.2d 696, 699 n.5 (2d Cir. 1971)). However, Defendant's behavior from the time she knocked on the informant's door was calculated to threaten and intimidate. Indeed, the informant felt compelled to lie when Defendant asked him if he had informed on Mr. Montgomery because he feared that if he told her the truth she would attack him immediately. The Court is confident that his fear was of immediate harm and that such fear was reasonable under the circumstances.

## CONCLUSION

The plain language of the statute, case law and public policy all support applying the protections of §§ 111 and 1114 to government informants. The resulting ability of the government to prosecute under a misdemeanor rather than a felony charge may, paradoxically, offer informants extra protection, since many actions directed at informants might not be so serious as to warrant felony prosecution, but might nonetheless merit sanction. Defendant's case certainly falls into that category, and the ability of the Court to accept her misdemeanor plea under § 111(a) and impose sentence accordingly has allowed a just resolution to this matter.

This Memorandum Opinion is filed in support of and as the reasoning for the Court's decision to accept the Defendant's plea of guilty to 18 U.S.C. § 111(a) on February 1, 2008.

BY THE COURT

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE